UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| HAROLD J. WADSWORTH, JR. and AMANDA J. SWANDER, Co-Administrators of the Estate of BILLIE JAY WADSWORTH deceased,<br>835 N. Brokate Road<br>Port Clinton, Ohio 43452 | CASE NO:<br><br>JUDGE: |
| Plaintiffs, | **COMPLAINT** |
| v. | **(Jury Demand Endorsed Hereon)** |
| OTTAWA COUNTY, OHIO and/or OTTAWA COUNTY COMMISSIONERS<br>c/o Mark W. Stahl<br>315 Madison Street, Room 103<br>Port Clinton, Ohio 43452 | |
| and | |
| STEPHEN J. LEVORCHICK<br>Ottawa County Sheriff<br>315 Madison Street, Room 110<br>Port Clinton, Ohio 43452<br>In his individual and official capacity | |
| and | |
| MICHAEL KIRKPATRICK<br>Captain, Ottawa County Sheriff's Office<br>315 Madison Street<br>Port Clinton, Ohio 43452<br>In his individual and official capacity | |
| and | |
| CHRISTIAN MICHAEL<br>c/o Ottawa County Sheriff<br>315 Madison Street<br>Port Clinton, Ohio 43452<br>In his individual capacity | |
| and | |

315 Madison Street )
Port Clinton, Ohio 43452 )
In his or her individual capacity )
)
and )
)
SHANNON BLANKENSHIP )
c/o Ottawa County Sheriff )
315 Madison Street )
Port Clinton, Ohio 43452 )
In his or her individual capacity )
)
and )
)
ANTHONY TESMOND, D.O. )
321 Channel Grove Road )
Lakeside Marblehead, Ohio 43440 )
)
and )
)
FIRELANDS REGIONAL HEALTH SYSTEM )
c/o Justin Harris )
1111 Hayes Avenue )
Sandusky, Ohio 44870 )
)
)
)
)
and )
)
JOHN AND/OR JANE DOE CORRECTIONS )
OFFICERS 1-10 and JOHN AND/OR JANE )
DOE MEDICAL AND MENTAL HEALTH )
STAFF 1-10 )
c/o Ottawa County Sheriff )
315 Madison Street )
Port Clinton, Ohio 43452 )
)
Defendants. )

Plaintiffs Harold J. Wadsworth, Jr. and Amanda J. Swander, citizens of the United States, as Co-Administrators of the Estate of Billie Jay Wadsworth, by and through

undersigned counsel, for their Complaint against the above-named Defendants, state and aver as follows:

## PARTIES

1. At all times material, Plaintiffs Harold J. Wadsworth, Jr. and Amanda J. Swander ("Plaintiffs") were/are the duly appointed Co-Administrators and personal representatives of the Estate of Billie Jay Wadsworth ("Decedent") (See Estate of Billie Jay Wadsworth Case No. 20261020, Probate Court of Ottawa County, Ohio), and bring this action pursuant to, among other things, 42 U.S.C. 1983, medical negligence, State of Ohio's Wrongful Death Statute, R.C. 2125.01 et seq., and Ohio Survival Statute, for the suffering of Decedent and for the benefit of Decedent's heirs, beneficiaries, and next of kin, who have suffered a loss of support, services, attention, and guidance, and who have endured mental anguish and have been otherwise damaged by the wrongful and untimely death of Decedent.

2. Decedent died intestate on November 18, 2025, and is survived by his minor son, B.J.W., his father Harold J. Wadsworth, Sr., his mother Bonnie J. Wadsworth, his sister Amie LW Gohlike, and his brother Harold J. Wadsworth, Jr.

3. Prior to Decedent's untimely death, Billie Jay Wadsworth was a pretrial detainee in the Ottawa County Detention Facility (hereinafter "Jail"), a citizen of the United States of America residing in the state of Ohio and entitled to the protections of the Constitutions and laws of the United States of America and the State of Ohio including Due Process.

4. Defendant Ottawa County (hereinafter "the County") was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant Ottawa County is a "person" under 42 U.S.C. § 1983. Defendant Ottawa County was/is the employer and principal of the individual Defendants and any other nurses, medical staff, and guards at the Jail and is responsible for the policies, practices, and customs of the Jail.

5. Ottawa County and all the Defendants listed herein operated the Jail and/or medical or mental healthcare at the Jail located at 315 Madison Street, Port Clinton, Ohio 43452,

where Decedent was held from November 14, 2025 to November 18, 2025.

6. At all times material Defendant Stephen J. Levorchick ("Levorchick") was and is the Ottawa County Sheriff with responsibilities for the Jail. At all times relevant, Levorchick was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Jail. Levorchick has final policymaking authority over policies, practices, and customs of the Jail. He is sued as a County employee as well as in his individual capacity. He himself acted with deliberate indifference to Decedent. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that led to Decedent's damages.

7. At all times material Defendant Michael Kirkpatrick ("Kirkpatrick") was a captain with the Ottawa County Sheriff's Office who interacted directly with Decedent on November 17, 2025, and was acting under color of law and within the scope of his employment.

8. At all times material Defendant Christian Michael ("Michael") was a deputy at the Jail who received Decedent's C-PAP machine on November 15, 2025, and documented that Decedent "[w]as given his C-Pap machine and moved to E range."

9. At all times material Defendant Vata Alliman ("Alliman") was the booking officer who completed Decedent's suicide screening and Mental Health Referral on November 14, 2025.

10. At all times material Defendant Shannon Blankenship ("Blankenship") was Jail staff who recorded on November 17, 2025 that Decedent "REFUSED TO SPEAK TO MENTAL HEALTH."

11. At all times material Defendant Anthony Tesmond, D.O. ("Tesmond") was the physician identified on Decedent's admission physician's orders and medication administration record at the Jail.

12. At all times material, Defendant Firelands Regional Health System ("Firelands") was and is a corporation and/or other legal entity duly organized and existing pursuant to the laws of the State of Ohio, with its principal place of business at 1111 Hayes Avenue, Sandusky,

Ohio 44870, and held itself out as a provider of medical and mental health care services to the public including Decedent. Upon information and belief, Firelands contracted with the County to provide medical and/or mental health services to detainees at the Jail, including Decedent. Firelands is therefore a "person" under 42 U.S.C. § 1983 that acted at all relevant times under color of law, and is responsible for the policies, practices, and customs related to the medical and mental health care it provided at the Jail.

13. At all times material Defendants Kirkpatrick, Michael, Alliman, Blankenship, and John and/or Jane Doe Corrections Officers 1-10 were guards and/or staff who were tasked with caring for and/or guarding Decedent, and under the color of law, were directly responsible for Decedent's custody, supervision, and care at the Jail.

14. At all times material Defendants Tesmond, Firelands, and John and/or Jane Doe Medical and Mental Health Staff 1-10 were physicians, nurses, and/or medical and mental health staff who were tasked with caring for Decedent, and under the color of law, were directly responsible for Decedent's medical and mental health care at the Jail. The exact names of the Doe Defendants are currently unknown to Plaintiffs despite reasonable efforts to obtain them and naming them here and now would likely name them mistakenly.

15. All Defendants caused and are responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with

others who did; by authorizing, acquiescing, or failing or refusing, with deliberate indifference to and reckless disregard for Decedent's clearly established and known rights, to initiate and maintain adequate training, supervision, and staffing; by failing to maintain proper and adequate policies, procedures and protocols, and customs and practices; and by ratifying the unlawful conduct performed by agents and officers, deputies, medical providers, personnel, and employees under their direction, supervision, and control.

## JURISDICTION AND VENUE

16. The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331, as certain claims asserted herein arise under the Constitution and laws of the United States, to wit, the Fourteenth Amendment to the United States Constitution Due Process, and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this district and a substantial part of the events or omissions giving rise to these claims occurred in Port Clinton, Ottawa County, Ohio.

## FACTUAL ALLEGATIONS

18. Defendants are required to ensure that the policies, practices, and customs of the Jail comply with federal and Ohio law concerning the treatment of persons in custody.

19. On December 29, 2024, the Ottawa County Sheriff's Office responded to Decedent's home for a possible suicidal male after he sent goodbye text messages and pictures of his open gun safe, and transported him to the Magruder Hospital emergency room, where he was admitted to wait for a counselor.

20. In January 2025, Decedent was hospitalized at "1 South," a behavioral health hospital in Sandusky, Ohio, after saying he was going to hurt himself.

21. On or about November 14, 2025, Decedent was arrested by the Ottawa County Sheriff's Office on a misdemeanor assault charge and booked into the Jail at 4:48 p.m.

22. During Decedent's booking suicide screening on November 14, 2025, there were indications that he was a suicide risk. He reported taking prescribed medication for mental health problems, listed as Seroquel, Lamictal, and Effexor, reported a significant loss within the last six months, and reported a psychiatric hospitalization recorded as: "THIS JANUARY WAS IN 1 SOUTH FOR SAID HE WAS GOING TO HURT HIMSELF."

23. Defendant Alliman completed a Mental Health Referral stating that Decedent was being referred to mental health services based on his answers to the suicide questions or his body language, noting "WAS IN 1 SOUTH THIS PAST JANUARY," and recording that Decedent wanted mental health services with the notation "PLACED ON LIST." The classification form recorded "BI POLAR" as a current serious medical or mental health issue. Decedent was nonetheless housed in general population.

24. The seriousness of these signs and symptoms was so obvious that even a lay person would easily recognize the necessity for a doctor's attention and/or further assessment and treatment.

25. On November 15, 2025, Jail medical staff noted a mental health referral, and admission physician's orders listed venlafaxine, quetiapine, and lamotrigine among Decedent's medications. A blood pressure flow sheet entry for November 16, 2025 bears the notation "no meds x3 days."

26. On November 15, 2025, a family member delivered Decedent's C-PAP machine to the Jail. She told Defendant Michael she wanted to report illegal activity, asked what would happen to Decedent, and asked "how he was able to have a C-Pap machine." Defendant Michael told her that if medical staff and the doctor said Decedent needed it, staff could not withhold it.

27. That evening, Decedent was given the C-PAP machine and moved to Cell E-1 on E Range because he had a sleep apnea machine. No Defendant removed the extension cord, provided a secured device, or placed Decedent under suicide precautions.

28. On November 15 and 16, 2025, the Sheriff's Office investigated Decedent for pandering obscenity involving a minor, served a search warrant at the Jail to seize his phone, and charged him with a felony carrying a $100,000 bond.

29. On November 17, 2025, Defendant Blankenship recorded that Decedent "REFUSED TO SPEAK TO MENTAL HEALTH." Upon information and belief, no Defendant reassessed Decedent's suicide risk, notified a physician, or placed him on observation after that refusal.

30. At approximately 4:29 p.m. on November 17, 2025, Defendant Kirkpatrick brought Decedent into the booking room to serve a protection order. Kirkpatrick told Decedent he seemed "down." Decedent told Kirkpatrick that 2025 had been "horrible," that he had been in 1 South earlier that year, and that he had said he would "kill himself" if his partner left him. When Kirkpatrick asked about any such "thoughts," Decedent held up his hand and said, "not doing that shit." Decedent then asked about the protection order and his firearms. Kirkpatrick took no step to secure an emergency evaluation, place Decedent on suicide watch, or remove the extension cord from his cell.

31. On November 18, 2025, Decedent should have been a known suicide risk and was a suicide risk, yet was not under suicide watch, any watch, or provided any type of counseling or mental health treatment. At approximately 3:04 p.m., Jail video shows Decedent shutting his own cell door.

32. No officer looked into Cell E-1 for approximately twenty-five minutes. At 3:29 p.m., Deputy Garrett Lemon found Decedent hanging from the orange C-PAP extension cord around the beam next to the sink.

33. Staff cut Decedent down and began CPR, and an AED repeatedly advised no shock. Port Clinton EMS transported Decedent to Magruder Hospital, where he was pronounced dead at 4:23 p.m. The Lucas County Coroner ruled the cause of death hanging and the manner of death suicide.

34. On October 1, 2025, six weeks before Decedent's death, the Ohio Department of Rehabilitation and Correction inspected the Jail and found it out of compliance with the standard requiring that violent and non-violent inmates not be housed together. There is other indication of matters out of compliance and other suicides at the jail prior to this.

35. Decedent died as a direct and proximate result of the breaches, failures, negligence, customs, policies, lack of training, violation of various laws, and deliberate indifference by all Defendants. From November 14, 2025 until his death, Decedent was in the exclusive custody, supervision, and control of all Defendants.

**FIRST CLAIM FOR RELIEF**

**(Violation of 42 U.S.C. § 1983 Against All Defendants in their Individual Capacity for Failure to Supervise, Train, and Take Corrective Measures Causing Constitutional Violations of the Fourteenth Amendment.)**

36. Plaintiffs incorporate all prior paragraphs as if fully rewritten herein.

37. At all times material Decedent had serious medical and mental health needs that were known and/or should have been known to all Defendants. At all times material, all Defendants were acting under color of state law in their various roles.

38. All Defendants knew of a custom, propensity, and pattern among corrections deputies and nursing staff of failing and/or refusing to provide prompt and competent access to and delivery of medical and mental health assessment, evaluation, care, intervention, referral, and treatment to detainees, including Decedent.

39. All Defendants had the duty to train, supervise, and instruct deputies, nurses, physicians, and medical and mental health personnel; to provide timely competent mental health assessment and referral; to monitor and periodically review the classification and housing of mentally ill detainees; and to train staff on recognizing, reporting, and responding to mental health symptoms of detainees. All Defendants acted with deliberate indifference by failing and/or refusing to do so.

40. As a direct and proximate result of the conduct of all Defendants, Decedent was forced to endure and suffer extreme physical, mental, and emotional pain and suffering, death,

and pecuniary loss, including funeral and burial expenses.

WHEREFORE, Plaintiffs pray for judgment against all Defendants in their individual and official capacity and/or against the County, for: a. Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiffs, the Estate of Billie Jay Wadsworth, and Billie Jay Wadsworth's next of kin; b. Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and c. All such relief which the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**

**(Violation of 42 U.S.C. § 1983 Against All Defendants, including, but not limited to the County, Levorchick, Firelands, for Custom, Policy, Failure to Train Employees, or Practice Causing Constitutional Violations of the Fourteenth Amendment, a Monell Claim pursuant to Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978).)**

41. Plaintiffs incorporate all prior paragraphs as if fully rewritten herein.

42. At all times material, the County, Levorchick, Firelands, promulgated and maintained a de facto unconstitutional custom, policy, or practice of permitting, ignoring, and condoning the denial of medical and mental health care to detainees, including Decedent, including but not limited to: (a) the failure and/or refusal to provide timely and adequate mental health evaluations of detainees; (b) the failure and/or refusal to provide timely and adequate medical and mental health assessment, intervention, referral, and treatment; and (c) the failure to train employees on the proper provision of psychological treatment and suicide prevention.

43. These customs, policies, and/or practices further included housing detainees with known suicide histories in single cells with cords that could serve as ligatures, failing to act on refusals of mental health contact, and failing to perform security checks at intervals adequate for detainees at risk of self-harm.

44. These customs, policies, and/or practices were the direct and proximate cause of the constitutional violations visited upon, and the injuries and death of, Decedent. This was all deliberate indifference and a substantial contributing factor to Decedent's death.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, for: a. Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiffs, the Estate of Billie Jay Wadsworth, and his next of kin, for their injury, damage, and loss; b. Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and c. All such other relief which the Court deems appropriate.

**THIRD CLAIM FOR RELIEF**

**(Violation of 42 U.S.C. § 1983 Against All Defendants for Failure to Provide Reasonably Adequate Medical and Mental Health Care in Violation of the Fourteenth Amendment.)**

45. Plaintiffs incorporate all prior paragraphs as if fully rewritten herein.

46. From November 14, 2025 to November 18, 2025, Decedent was a known suicide risk, yet this was deliberately ignored, and no further action was taken to assess this risk. On November 17, 2025, Decedent again disclosed his prior suicide threats to Defendant Kirkpatrick, but no further action was taken to assess the risk.

47. As a direct and proximate result of the foregoing conduct, all Defendants deprived Decedent of his clearly established and known rights under the Fourteenth Amendment, including his right to be free from a deprivation of life and liberty without due process of law and his right to be provided with adequate medical and mental health care.

48. As a direct and proximate result, Decedent was forced to endure and suffer extreme physical, mental, and emotional pain and suffering, death, and pecuniary loss.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, for: a. Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiffs, the Estate of Billie Jay Wadsworth, and his next of kin, for their injury, damage, and loss; b. Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein; c. Costs of suit and reasonable

attorney's fees pursuant to 42 U.S.C. § 1988; and d. All such other relief which the Court deems appropriate.

**FOURTH CLAIM FOR RELIEF**

**(Medical Malpractice against The County, Tesmond, Firelands, , and Medical and Mental Health Staff)**

49. Plaintiffs incorporate all prior paragraphs as if fully rewritten herein.

50. The County, Tesmond, and Firelands, and the nurses and medical and mental health staff had a duty to provide thorough medical and mental health care to Decedent including but not limited to testing, assessment, treatment, and diagnoses.

51. The County, Tesmond, and Firelands, and the nurses and medical and mental health staff that evaluated, saw, and treated Decedent did not properly assess and/or evaluate his serious risk for suicide and/or self-harm and, in fact, ignored his serious risk for suicide and/or self-harm. This was negligent and below the standard of care.

52. The County, Tesmond, and Firelands were negligent in failing to employ individuals who could and would treat Decedent with the same level of care that other reasonably careful medical and mental health providers would provide under the same circumstances.

53. As a direct and proximate result of the collective and/or individual negligence of these Defendants, Decedent was not provided proper medical and mental health care commensurate with the requisite standard of care and died.

WHEREFORE, Plaintiffs pray for judgment against the County, Tesmond, Firelands, and the individual nurses and medical and mental health providers for: a. Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiffs, the Estate of Billie Jay Wadsworth, and Billie Jay Wadsworth's next of kin; b. Costs of suit and reasonable attorney's fees; and c. All such relief which the Court deems appropriate.

**FIFTH CLAIM FOR RELIEF**

**(Wrongful Death Pursuant to R.C. 2125.02 against All Defendants)**

54. Plaintiffs incorporate all prior paragraphs as if fully rewritten herein.

55. Defendants' actions caused the wrongful death of Decedent, resulting in damages recoverable under R.C. 2125.02. As a direct and proximate result, Decedent's survivors have suffered the loss of his support, services, and society, including lost companionship, care, guidance, and prospective inheritance, as well as grief, depression, and severe emotional distress, and have incurred funeral expenses.

**SIXTH CLAIM FOR RELIEF**

**(Survivorship Claim for Conscious Pain and Suffering against All Defendants)**

56. Plaintiffs incorporate all prior paragraphs as if fully rewritten herein.

57. As a direct and proximate result of the wrongful actions and omissions of Defendants, Decedent suffered severe mental anguish and conscious pain and suffering before he lost consciousness for the final time.

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severally, on the Fifth and Sixth Claims for Relief for compensatory damages in an amount in excess of $75,000, punitive damages against the individual Defendants, costs of suit and reasonable attorney's fees, and all such other relief which the Court deems appropriate.

Respectfully submitted,

/s/ *Timothy Puin*

Timothy Puin (0065120)
John Colan (0081778)
THE BUCKEYE LAW GROUP, INC.
127 Public Square, Suite 1540
Cleveland, Ohio 44114
Phone: (216) 373-0039
Fax: (216) 452-0981
Email: jcolan@buckeyelawgroup.com
litigation@buckeyelawgroup.com

*Attorneys for Plaintiffs*

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all triable issues.

*/s/ Timothy Puin*________________
Timothy Puin (0065120)
John Colan (0081778)

*Attorneys for Plaintiffs*